FILED
RICHARD W. NAGEL
CLERK OF COURT

2019 MAR -4 PM 3:01

U.S. DISTRICT COURT
SOUTHERN DIST OHIO
WEST. DIV. CINCINNATI

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER **513-968-1042** | Case No. **1:19MJ-154**<br><br>**Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Tyler D. Field, being first duly sworn, hereby depose and state as follows:

#### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **513-968-1042**, (the "**SUBJECT TELEPHONE**"), whose service provider is T-Mobile US, Inc., a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ. **SUBJECT TELEPHONE** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3123(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3. I am a Special Agent (SA) of the Drug Enforcement Administration (DEA) and have been so employed since March 2016. I also serve as a U.S. Army Military Police Major in

the Indiana Army National Guard and have done so for over sixteen years. Prior to being employed with the DEA, I was employed as a police officer for the Town of Bridgewater, Massachusetts for over three years. I graduated from the U.S. Army Military Police School, Plymouth Police Academy, and DEA Basic Agent Academy. During those courses I received training in the investigation of offenses involving controlled substances. As a Special Agent of the DEA, my duties and responsibilities include conducting criminal investigations for violations of federal law, particularly those found in Title 21 and Title 18 of the United States Code. As a DEA agent, I have participated in approximately fifteen criminal investigations seeking evidence of violations of the Federal Controlled Substances Act (Title 21, of the United States Code).

4. I am currently assigned to the Cincinnati Resident Office of the DEA. I received specialized training from the DEA, including the 18-week Basic Agent Training course. That training focused on methods of unlawful drug trafficking; the identification of controlled substances; surveillance; undercover operations; confidential source management; the means by which drug traffickers derive, launder, and conceal their profits from drug trafficking; the use of assets to facilitate unlawful drug trafficking activity; and the law permitting the forfeiture to the United States of assets purchased with drug proceeds or assets used or intended to be used to facilitate the drug violations.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 United States Code, Sections 841 and 846 have been committed, are being

committed, and will be committed by Oscar TORBERT, UM1196, the unidentified male using 52-6672491678 (UM1678), and other as-yet known and unknown individuals. I believe there is probable cause that the **SUBJECT TELEPHONE** is being used in furtherance of the aforementioned crimes and that there is also probable cause to believe that the location of the **SUBJECT TELEPHONE** will constitute evidence of those criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

7. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

**PROBABLE CAUSE**

8. The United States, including the Drug Enforcement Administration, is conducting a criminal investigation of Oscar TORBERT and other as yet unidentified subjects regarding possible violations of 21 U.S.C. §§ 841(a)(1) and 846.

9. In January 2019, through TORBERT's own negligence, CS #1[1] was provided the opportunity to access the telephone associated with **513-968-1042** (the **SUBJECT TELEPHONE**), which was in TORBERT's possession. CS#1 took advantage of that opportunity on self-initiative, taking pictures of some of the text messages and phone calls sent to/from the **SUBJECT TELEPHONE** and subsequently providing it to agents, confirming the telephone number the **SUBJECT TELEPHONE**. Agents also observed multiple text messages

---

[1] CS# 1 has been charged with a felony drug-trafficking violation and is cooperating for consideration in sentencing. CS# 1 has previously been able to provide information independently corroborated by law enforcement officers and your affiant considers this CS# 2 reliable.

3

that we believe relate to the distribution of controlled substances. For example on January 14, 2019, an unknown male using telephone number 513-954-1196 (hereinafter referred to as UM1196) sent a text message to the **SUBJECT TELEPHONE** that read "Nephew your cousin Mike might want two of them Zips that is." Based on my training, experience, and discussions with other law enforcement officers/agents, I am aware that the word "zip" commonly refers to ounce-quantities of controlled substances. Consequently, I believe that in this text message, UM1196 was telling TORBERT that a third individual wanted two ounces of controlled substances from TORBERT.

10. Also in January 2019 agents interviewed a cooperating defendant (CD[2]) who stated that the CD has contact with an unidentified Mexican source of supply who could get the CD "whatever [the CD] wanted," to include crystal methamphetamine for approximately $4,000 per pound. Based on my training, experience, and my knowledge that the source of supply told the CD that he could get the CD crystal methamphetamine, I believe that when the source of supply said he could get "whatever" the CD wanted, the source of supply was referring to other types of controlled substances. The CD stated that the CD had two Mexican telephone numbers stored in the CD's telephone for the source of supply. Upon a review of tolls for the CD's telephone, agents observed that the CD had only previously been in contact with two Mexican telephone numbers, to include 52-6672491678. Consequently, I believe that the CD was using telephone number 52-6672491678 to communicate with UM1678 regarding the distribution of controlled substances.

---

[2] The CD has been arrested for a felony drug offense and is cooperating for consideration in sentencing on the pending drug offense. Agents have been able to independently corroborate information provided by the CD and believe the CD to be reliable.

4

11. On February 28, 2019, I reviewed subscriber and call records for the **SUBJECT TELEPHONE**. According to subscriber records, the **SUBJECT TELEPHONE** was subscribed on January 13, 2019 to "Johnny Montana" at 1234 amain st, Cincinnati, Ohio. Based on my training, experience, and discussions with other law enforcement officers/agents, I am aware that drug traffickers often use recently activated telephones subscribed to fictitious names and addresses to avoid detection from law enforcement.

12. According to call records, between February 10, 2019 and February 15, 2019, the **SUBJECT TELEPHONE** communicated with telephone number 52-6672491678 approximately 18 times.

13. Based on my belief that TORBERT communicated with UM1196 using the **SUBJECT TELEPHONE** regarding the distribution of two ounces of controlled substances and my belief that the CD communicated with UM1678 using 52-6672491678 regarding the distribution of controlled substances, I believe the communications between TORBERT, using the **SUBJECT TELEPHONE,** and UM1678, using 52-6672491678, regard the distribution of controlled substances.

14. Based on the information set forth in this affidavit, I believe that there is probable cause to believe that **SUBJECT TELEPHONE** is utilized in ongoing criminal activity, specifically in violation of Title 21 U.S.C. §§ 841 and 846. I believe there is probable cause that locating the general geographical position and movements of **SUBJECT TELEPHONE** will assist law enforcement in identifying, dismantling and disrupting TORBERT's illegal drug dealing activities.

15. In my training and experience, I have learned that T-Mobile US, Inc. is a company that provides cellular telephone access to the general public. I also know that providers

5

of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. [Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

16. Based on my training and experience, I know that T-Mobile US, Inc. can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on T-Mobile US, Inc.'s network or with such other reference points as may be reasonably available.

17. Based on my training and experience, I know that T-Mobile US, Inc. can collect cell-site data about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the

duration of the communication. I also know that wireless providers such as T-Mobile US, Inc. typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

18. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

19. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

20. I further request that the Court direct T-Mobile US, Inc. to disclose to the government any information described in Attachment B that is within the possession, custody, or control of T-Mobile US, Inc.. I also request that the Court direct T-Mobile US, Inc. to furnish

the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with T-Mobile US, Inc.'s services, including by initiating a signal to determine the location of the Target Cell Phone on T-Mobile US, Inc.'s network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate T-Mobile US, Inc. for reasonable expenses incurred in furnishing such facilities or assistance.

21. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

22. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

_____
Tyler D. Field
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on this 4th day of March 2019

_____
Honorable Stephanie K. Bowman
United States Magistrate Judge

8

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number **513-968-1042**, whose wireless service provider is T-Mobile US, Inc., a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ.

2. Records and information associated with the Target Cell Phone that is within the possession, custody, or control of T-Mobile US, Inc., including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

### I. Information to be Disclosed by the Provider

All information about the location of the Target Cell Phone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of T-Mobile US, Inc., T-Mobile US, Inc. is required to disclose the Location Information to the government. In addition, T-Mobile US, Inc. must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with T-Mobile US, Inc.'s services, including by initiating a signal to determine the location of the Target Cell Phone on T-Mobile US, Inc.'s network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate T-Mobile US, Inc. for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

### II. Information to Be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 21 U.S.C. § 841(a)(1) and 846 involving Oscar TORBERT and other as yet unidentified subjects.